FILED

2010 Jul-20  PM 12:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **JENNY CRONE BOURLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 6:09-CV-984-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF THE** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Jenny Crone Bourland ("Ms. Bourland") commenced this action on May 20, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be **REVERSED** and **REMANDED**.

## STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Bourland alleged that her disability period began on July 31, 2003. (Tr. 64). She was 53 years of age on that date. (Tr. 64). She alleged an inability to work due to the onset of chronic obstructive pulmonary disease, arthritis, acute bronchitis, diabetes, and neuropathy. (Tr. 68). Ms. Bourland's past gainful work experiences include jobs as a cook, sewing machine operator, inspector, maid and as an owner and caretaker of a daycare facility. (Tr. 70, 229-230).

Ms. Bourland filed an application for benefits on March 29, 2006. (Tr. 55-57, 65). Her claims were denied initially on September 26, 2006. (Tr. 40-44). On October 3, 2006, she filed a request for a hearing before an ALJ. (Tr. 51).

A hearing before the ALJ was held on March 5, 2008. (Tr. 253-304). The ALJ concluded Ms. Bourland was not disabled as defined by the Social Security Act and denied her application for benefits. (Tr. 10-25). Ms. Bourland subsequently filed a timely request for review with the Appeals Council. (Tr. 9). On April 22, 2009, it denied review, which resulted in the ALJ's decision being the final decision of the

Commissioner.  (Tr. 3-5).

On May 19, 2009, Ms. Bourland filed her complaint with this court asking for review of the ALJ's decision.  (Doc. 1).  The matter is ripe for review.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.  Also, the Commissioner has a "duty to develop a full and fair record."  *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996).

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in

sequence:

(1)    whether the claimant is currently employed;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4)    whether the claimant can perform her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).    "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.    If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."    *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).    The Commissioner must further show that such work exists in the national economy in significant numbers.    *Foote*, 67 F.3d at 1559.

4

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Bourland had not engaged in substantial gainful activity since the onset of her alleged disability on July 31, 2003. (Tr. 24). Thus, Ms. Bourland satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ determined that Ms. Bourland had the severe impairments of "chronic obstructive pulmonary disease, arthritis and diabetes." (Tr. 24). Accordingly, the ALJ concluded that Ms. Bourland satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Bourland did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24).

The ALJ evaluated Ms. Bourland's residual functional capacity [1] ("RFC") at step four, and found that she had the ability "to perform medium work which does not require working in a non-temperature controlled environment." (Tr. 24). The ALJ then determined that Ms. Bourland was able to perform her past work as a daycare worker. (Tr. 24 (citing 20 C.F.R. § 404.1565)).

---

[1] "Residual functional capacity is the most [one] can still do despite [one's] limitations." 20 C.F.R. § 404.1545(a)(1).

5

Because the ALJ found that Ms. Bourland had the RFC to perform her past work, the ALJ did not need to proceed to the fifth step of analysis.

Based on the foregoing, the ALJ concluded Ms. Bourland was not disabled as defined by the Social Security Act, at any time from July 31, 2003, through January 16, 2009, the date of the ALJ's decision.  (Tr. 24).

## ANALYSIS

Ms. Bourland asserts a host of issues in support of her appeal.  Among those, she specifically contends that the ALJ committed an error of law by improperly rejected the testimony of her treating physician and that the ALJ's RFC finding was not based on substantial evidence.  The court will address those arguments in turn, and finds that, under the circumstances of Ms. Bourland's case, the ALJ committed reversible error.[2]

## I.    The ALJ improperly rejected the opinion of Ms. Bourland's treating physician.

In the present case, Ms. Bourland's treating physician, Dr. Sehgal, completed a physical capacity evaluation.[3]  (Tr. 23).  The opinion of a treating physician "must

---

[2] As a result, the court does not reach the merits of the other issues raised on appeal.

[3] "An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled.  It must be supported by clinical or laboratory findings."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B Nov. 12, 1981) (citations omitted); *see also Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) (decisions rendered after October 1, 1981, by a former Fifth Circuit Unit B panel are binding authority in

be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* The ALJ refused to give Dr. Sehgal's physical capacity evaluation "controlling weight" because

> it appears that [Dr. Sehgal] uncritically appeared to accept [Ms. Bourland's] subjective assertions although his own, clinical findings do not establish such extreme limitations . . . the record contains no tests or studies performed on the claimant by him which attempts [sic] to accurately measure her true functional abilities. Because no such tests have been performed, the designations on the referenced physical capacity evaluation can only be as the result of his own speculation or based on statements from the claimant which are not totally credible.

(Tr. 23).

As an initial matter, "[i]n evaluating the medical evidence the [ALJ] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053

---

the Eleventh Circuit). The physical capacity evaluation prepared by Dr. Sehgal, who examined Ms. Bourland, contains that physician's clinical findings.

(11th Cir.1986)) (internal marks omitted).  Here, the ALJ stated what weight he was *not* giving Dr. Sehgal's physical capacity evaluation – *i.e.*, "controlling weight." However, the ALJ's opinion is silent as to the weight he *did* assign to Dr. Sehgal's opinion.  That omission alone is "reversible error."  *Id.*  Moreover, a treating physician's opinion is entitled to "substantial or considerable weight," *Phillips*, 357 F.3d at 1240-41, not "controlling weight."  Because the ALJ did not state whether he did or did not give Dr. Sehgal's physical capacity evaluation "substantial or considerable weight," the court cannot determine whether the ALJ applied proper legal standards with regard to the weight that is to be afforded to a treating physician's opinions.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("[T]he Secretary's conclusions of law are not presumed valid. The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (internal citations omitted).

Assuming for the sake of argument that the ALJ did <u>not</u> give Dr. Sehgal's opinion "substantial or considerable weight," the ALJ did not show good cause for his rejection of Dr. Sehgal's opinion.  "An administrative law judge may not arbitrarily reject uncontroverted medical testimony." *Walden v. Schweiker*, 672 F.2d

835, 839 (11th Cir. 1982) (citing *Goodley v. Harris*, 608 F.2d 234 (5th Cir. 1979)).[4]

"[T]he ALJ is free to reject the opinion of any physician when the *evidence* supports

a contrary conclusion."   *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)

(emphasis supplied); *see also* 20 C.F.R. § 404.1527(b) ("[The ALJ] will always

consider the medical opinions in [the] case record together with the rest of the

relevant *evidence* ... receive[d].") (emphasis supplied).   When determining that he

would not give Dr. Sehgal's opinions "controlling weight," the ALJ did not cite to

*any* evidence of record at all.   Therefore, it stands to reason that the ALJ did not reject

Dr. Sehgal's opinion because "the: (1) treating physician's opinion was not bolstered

by the evidence [or because]; (2) evidence supported a contrary finding[.]" *Phillips*,

357 F.3d at 1241.   It also appears that the findings of Dr. Sehgal's physical capacity

evaluation are uncontroverted.

Insofar as the ALJ implicitly rejected Dr. Sehgal's physical capacity evaluation

as being conclusory, *see id.*, the ALJ has impermissibly substituted his own

unsupported conclusions for those of Ms. Bourland's treating physician because the

ALJ failed to reference any evidence of record to controvert Dr. Sehgal's findings.

*See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (an ALJ may not

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

substitute his opinion for that of a doctor); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir.1986) (same); *see also Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir.1992) (Johnson, J., concurring) (finding that an "ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians"). Stated differently, "[a]n ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Marbury*, 957 F.2d at 840-41.

It is also not evident from the written decision that the ALJ considered all of the medical evidence when rejecting Dr. Sehgal's physical capacity evaluation. The ALJ paraphrased Dr. Sehgal's clinical findings, the tests performed on Ms. Bourland, and the different diagnoses made by Dr. Sehgal. (Tr. 18-21). However, the ALJ opined that, because there were no tests performed on Ms. Bourland by Dr. Sehgal personally, "the designations on the referenced physical capacity evaluation can only be as the result of his own speculation or based on statements from the claimant which are not totally credible." (Tr. 23). The ALJ does not offer any legal authority for the proposition that a treating physician's diagnoses and evaluations are properly discredited if that physician did not personally conduct tests on a claimant. In fact,

such a piecemeal analysis of a claimant's medical evidence is not in accordance with established law.  An ALJ is obligated to demonstrate, in his written decision, that he considered a claimant's "medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citations and marks omitted).  It is contrary to the ALJ's duty to examine the evidence and Ms. Bourland's "medical condition as a whole," particularly in a case such as this one where there are medical tests in the record and in light of the fact that the ALJ has not cited to any contradictory evidence, for the ALJ to take the position that Dr. Sehgal's physical capacity evaluation is entitled to less than substantial or considerable weight simply because Dr. Sehgal did not personally perform the tests that are of record.

In addition, the ALJ bolsters his rejection of the physical capacity evaluation with his own conclusory finding that certain of Ms. Bourland's statements (specifically those that conflicted with the ALJ's RFC determination) made under oath at the hearing of this matter were not credible.  (Tr. 22-23).  However, the ALJ has not cited to any evidence that Ms. Bourland's statements at the hearing (that the ALJ found were not credible) are identical to things she might have told Dr. Sehgal prior to his completion of the physical capacity evaluation.  In short, the ALJ is simply speculating about what Dr. Sehgal relied upon.  Without providing a reference to any evidence that contradicts Dr. Sehgal's findings, the ALJ has independently

reached conclusions that are contrary to Dr. Sehgal's physical capacity evaluation. By not relying on evidence that contradicts Dr. Sehgal's findings, the ALJ has improperly substituted his own opinion for that of Ms. Bourland's treating physician. *See Freeman*, 681 F.2d at 731.

In summary, the ALJ in this instance has not provided "reasons" for discrediting Dr. Sehgal's opinions that are supported by contradictory evidence; he has only stated conclusions that stand contrary to seemingly uncontroverted medical evidence provided by Ms. Bourland's treating physician. The ALJ's written decision does not demonstrate that he applied the correct legal standards when considering the physical capacity evaluation provided by Ms. Bourland's treating physician or that he showed good cause for giving the treating physician's opinion less than substantial or considerable weight. Those failures constitute reversible error.

## II.   The record does not support the RFC finding that Ms. Bourland can perform "medium" work.

"The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for his decision in order to enable a reviewing court to determine whether the decision was based on substantial evidence." *Moncrief v. Astrue*, 300 Fed. Appx. 879, 881 (11th Cir. 2008) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). In the present case, the ALJ does not provide any

sort of reasoning to explain or support his RFC determination.  When making the

RFC determination, the ALJ simply conclusorily opined as follows:

> After having carefully considered the entire documentary evidence and
> testimony of Ms. Bourland, I conclude that she retains the residual
> functional capacity to perform *medium work* which is performed in a
> temperature controlled environment.  Any of Ms. Bourland's testimony
> otherwise is not credible.  I do not find Ms. Bourland's allegations of an
> inability to work around any smoke, perfumes or home fragrances
> credible or consistent with the medical evidence of record.  Nor do I
> consider credible . . . her allegations of disabling osteoarthritis related
> symptoms in light of Dr. Bagley's[5] objective, clinical findings, which
> were largely unremarkable, except for some decreased sensation to light
> touch and pinprick.

(Tr. 22) (emphasis supplied).  "Medium work involves lifting no more than 50 pounds

at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20

C.F.R. § 404.1567(c).

Substantial evidence is "more than a scintilla, but less than a preponderance."

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  In this case, the court

has carefully reviewed the entire file, and there is simply no evidence of record, much

less substantial evidence, to support an RFC finding that Ms. Bourland is capable of

performing work at a "medium" exertional level.

---

[5] Dr. Bagley, a pediatrician, was not Ms. Bourland's treating physician.  Dr. Bagley
examined Ms. Bourland at the behest of the Commissioner.  As noted above, Ms. Bourland was
53 years old on the alleged onset disability date.

Also, the RFC determination is belied by the ALJ's own discussion of the evidence of record.  In the ALJ's "Statement of the Evidence," (Tr. 16-21), he paraphrases various reports and examinations made by different medical sources regarding Ms. Bourland.  The ALJ noted that the state agency medical consultant, Van B. Hayne, Jr., "opined that the claimant's pulmonary impairment limits her to *light work*.  [Dr. Hayne] further opined that more information was needed to determine the limitations attributable to the claimant's joint pain." (Tr. 21) (emphasis supplied).  The ALJ also stated that Ms. Bourland's treating physician, Dr. Sehgal,[6] found that Ms. Bourland "can frequently lift less than 3 pounds and occasionally lift only 5 pounds."  (Tr. 21).

In short, the ALJ's written decision is not clear as to what evidence he relied upon to reach his RFC determination that Ms. Bourland could perform "medium" work.   More important, there is no evidence in the record supporting this determination.  As such, the court finds that the RFC determination has not been adequately explained, *see Moncrief*, *supra*, and it is not based on substantial evidence.

---

[6] As discussed in Section I, *supra*, the ALJ rejected Dr. Sehgal's physical capacity evaluation of Ms. Bourland.  Nevertheless, Dr. Sehgal's ALJ-rejected opinion is the only opinion cited by the ALJ as evidence regarding the amount of weight Ms. Bourland can lift and carry.

Because the ALJ's conclusion that Ms. Bourland could return to her past relevant work as a daycare provider, which the ALJ implicitly classified as "medium" work (Tr. 23),[7] is based on a faulty RFC determination, that finding is also erroneous and cannot stand on appeal.  The Commissioner must reassess whether Ms. Bourland can return to her past work after he renders new findings regarding Ms. Bourland's RFC.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.  The decision of the Commissioner will be remanded by a separate order.

**DONE** and **ORDERED** this the 20th day of July, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[7] (*See also* Tr. 290 (Vocational expert James A. Hare testified that "[o]n the daycare . . . [f]rom lifting the kids.  I stated it was light.  I would move it to medium and semi-skilled.")).

15